UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ANNA HARRIS, | : | Hon. Joseph H. Rodriguez |
| Plaintiff, | : | Civil Action No. 05-2036 |
| v. | : | MEMORANDUM OPINION |
| | | & ORDER |
| AMERISOURCEBERGEN CORP., et al., | : | |
| Defendants. | : | |

This matter has come before the Court on motion of Defendants Amerisourcebergen Corp., Amerisourcebergen Services Corp., Erica Connell, and Katrina Willans, for summary judgment pursuant to Fed. R. Civ. P. 56 [Document 39]. The Court has considered the submissions of the Defendants, and Plaintiff's opposition to the motion, and heard oral argument on the record on May 20, 2008. For the reasons set forth here, and on the record during oral argument, the Defendants' motion is denied.

**Factual Background**

On April 18, 2005, Plaintiff Anna Harris filed a Complaint in this Court against her former employer Amerisourcebergen Corp. She alleges that she was wrongfully terminated in violation of the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, and the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1. Also named as Defendants are Erica Connell, Plaintiff's former supervisor, and Katrina Willans, another supervisor for Defendant.

Plaintiff was hired by Defendant as a billing clerk in its Thorofare, New Jersey facility in October of 2003. Shortly thereafter, she informed her supervisor, Connell,

that she had been diagnosed with Type 2 Diabetes.  In March of 2004, Plaintiff was diagnosed as suffering from Hepatitis C.  Plaintiff alleges that Connell informed her that if she ever tried to take medical leave, Connell's supervisor, Willans, would fire her.

In October 2004, Plaintiff met with Connell, Willans, and Willans' supervisor, Drew Sinclair, to discuss the impact that her health problems had on her job.  On December 8, 2004, Plaintiff e-mailed Connell in application for FMLA Leave.  Plaintiff was terminated on December 10, 2004.

## Summary Judgment Standard

"Summary judgment is proper if there is no genuine issue of material fact and if, viewing the facts in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law." Pearson v. Component Tech. Corp., 247 F.3d 471, 482 n.1 (3d Cir. 2001) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)); accord Fed. R. Civ. P. 56 (c).  Thus, this Court will enter summary judgment only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56 (c).

An issue is "genuine" if supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the outcome of the suit.  Id.  In determining whether a genuine issue of material fact exists, the court must view the facts and all reasonable inferences drawn from those facts in the light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

Initially, the moving party has the burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Id.; Maidenbaum v. Bally's Park Place, Inc., 870 F. Supp. 1254, 1258 (D.N.J. 1994). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Andersen, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . . .'" Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs, 982 F.2d 884, 890 (3d Cir. 1992) (quoting Quiroga v. Hasbro, Inc., 934 F.2d 497, 500 (3d Cir. 1991)). Indeed,

> the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.

Celotex, 477 U.S. at 322.

In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). Credibility determinations are the province of the factfinder. Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992).

### FMLA

In the first count of the Complaint, Plaintiff asserts that Defendants' decision to terminate her was based, in determinative part, on Plaintiff's exercise of her FMLA

rights.  The purposes of the Family Medical Leave Act ("FMLA"), 29 U.S.C. § 2601, are

to "balance the demands of the workplace with the needs of families" and "to entitle

employees to take reasonable leave for medical reasons."  29 U.S.C. § 2601(b)(1) and (2).

To those ends, the FMLA requires that "an eligible employee shall be entitled to a total

of twelve workweeks of leave during any twelve month period" if the employee has a

"serious health condition that makes the employee unable to perform the functions of

the position of such employee." 29 U.S.C. § 2612(a)(1)(D).

 "To trigger the application of the FMLA, an employee must provide his employer

with notice that leave is necessary."  Johnson v. Thru Point, Inc., 160 Fed. Appx. 159,

162 (3d Cir. 2005)  (citing 29 C.F.R. § 825.303 and holding that the plaintiff had not put

his employer on notice of his need for health-related leave because he neither advised

his employer of a medical condition nor provided the employer with an opportunity to

discover it).  The Code of Federal Regulations states that:

> [a]n employee shall provide at least verbal notice sufficient to make the
> employer aware that the employee needs FMLA-qualifying leave, and the
> anticipated timing and duration of the leave.  The employee need not
> expressly assert rights under the FMLA or even mention the FMLA, but may
> only that leave is needed for an expected birth or adoption, for example.

29 C.F.R. § 825.302(c) (2006).  Therefore, "[t]o trigger the rights guaranteed under the

FMLA, an employee need not actually mention the FMLA by name, "the critical question

is whether the information imparted to the employer is sufficient to reasonably apprise

it of the employee's request to take time off for a serious health condition."  Holpp v.

Integrated Commc'ns Corp., Civ. No. 03-3383, 2005 WL 3479682, at *5 (D.N.J.

December 20, 2005) (quoting Brohm v. JH Props., 149 F.3d 517, 523 (6th Cir. 1998))

(emphasis added).  Moreover, 29 C.F.R. § 825.302(c) requires an employer to "inquire

further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." 29 C.F.R. § 825.302(c) (2006).

The FMLA further provides:

> [i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter.

29 U.S.C. § 2615(a)(2) (1993).  In addition, the Department of Labor's regulations also provide that "[a]ny violations of the [FMLA] or of these regulations constitute interfering with, restraining, or denying the exercise of rights provided by the Act."  29 C.F.R. § 825.220(b).  "'Interfering with' the exercise of an employee's rights would include, for example, not only refusing to authorize FMLA leave, but discouraging an employee from using such leave. It would also include manipulation by a covered employer to avoid responsibilities under FMLA."  29 C.F.R. § 825.220(b).  Moreover, "[e]mployees cannot waive, nor may employers induce employees to waive, their rights under FMLA."  29 C.F.R. § 825.220(d).  On the other hand, if an employee is discharged during a protected leave for a reason unrelated to the leave, there is no right to reinstatement.  Conoshenti v. Public Service Elec. & Gas Co., 364 F.3d 135, 141 (3d Cir. 2004) (citing 29 C.F.R. § 825.216(a)(1)).  See also Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001).

To establish a prima facie claim of retaliation for requesting FMLA leave, a plaintiff must show that: (1) she engaged in protected activity (taking FMLA leave); (2) she suffered an adverse employment decision; and (3) the adverse decision was causally related to the leave.  Conoshenti, 364 F.3d at 146-47.  Temporal proximity between the

protected activity and adverse employment action may be used as circumstantial evidence to infer causation.  See Kachmar v. SunGard Data Sys., Inc., 109 F.3d 173, 177 (3d Cir. 1977).  However, an employer is not required to suspend its termination proceedings just because the employee requests medical leave.  See, e.g., Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001).  "A contrary holding might impede employers from permissible terminations and encourage employees aware of an impending termination to attempt to create their own 'severance package.'" Windfelder v. The May Dep't Stores Co., 93 Fed. Appx. 351, 355 (3d Cir. 2004).

It is not clear from the record that the decision to terminate Plaintiff had been made prior to December 8, 2004.  As there are genuine issues of material fact surrounding that timing, the Court will assume in this case that a prima facie case has been met because of the temporal proximity between the Plaintiff's December 8, 2004 leave request and December 10, 2004 termination.  See Jalil v. Avdel Corp., 873 F.2d 701, 708 (3d Cir. 1989).

As with other discrimination cases, once a plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for its adverse employment decision.  McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).  The employer may satisfy this burden "by introducing evidence which, taken as true, would permit the conclusion that there was a nondiscriminatory reason for the unfavorable employment decision." Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 509 (1993)).  Accordingly, the Court has looked to the Defendants' proofs for a legitimate, nondiscriminatory reason for Plaintiff's discharge.  Defendants have met their burden in this regard.

In November 2003, Plaintiff made a billing error which was deemed a typo, and no discipline was issued.  (Spreter Suppl. Cert., Exh. U, Contract Price Research Request.)  In January 2004, Plaintiff was the subject of a document titled "employee verbal report" after she made several billing errors.  (Spreter Suppl. Cert., Exh. V.)  She received an "employee warning report" when she left work early without permission from her supervisor.  (Spreter Suppl. Cert., Exh. Y.)  Plaintiff's third warning came on May 18, 2004 when she returned from an authorized leave of absence only to inform her supervisor that she was not staying because her mother was in the hospital.  (Spreter Suppl. Cert., Exh. AA.)  There is a document in the record from Plaintiff's personnel file entitled "Documented Infraction," which indicates that Plaintiff again made a billing error and was spoken to.  (Spreter Suppl. Cert., Exh. BB.)  In May 2004, Plaintiff received a performance evaluation that gave her an overall rating of "Partially Meets Expectations," grouping her with "[a]ssociates who are not fully meeting performance expectations and require improvement in some areas; newer associates making slower than acceptable progress in meeting the position requirements."  (Spreter Suppl. Cert., Exh. CC.)

On November 3, 2004, Connell sent Plaintiff and her co-worker a detailed e-mail with instructions on how to handle sensitive customers and deliver re-bills; it instructed them not to start a conversation with any chargeback clerks when delivering re-bills, but to make sure there is an explanatory note on the re-bills.  (Connell Cert., Exh. O.)  On November 10, 2004, Plaintiff was sent "a friendly reminder" via e-mail from supervisor Jennifer Whitby about adhering to breaktime policy.  (Connell Cert., Exh. DD.)  The next day, Connell assigned Plaintiff "set breaks and lunch times," asserting that Plaintiff had had too many "infractions."  (Connell Cert., Exh. EE.)

On November 26, 2004, when she came to work wearing sweat pants, Plaintiff was subject to a "Corrective Action" memo deemed "final written warning." (Spreter Suppl. Cert., Exh. FF.)  It indicated that she had received a prior verbal warning  about the dress code policy on November 10, 2004, and the "[n]ext infraction [would] result in termination." (Id.)

Once the employer meets this "relatively light burden," "the burden of production rebounds to the plaintiff, who must now show by a preponderance of the evidence that the employer's explanation is pretextual." Fuentes, 32 F.3d at 763.  To defeat a motion for summary judgment, a plaintiff can show pretext by "point[ing] to some evidence, direct or circumstantial, from which a fact finder could reasonably either (1) disbelieve the employer's articulated legitimate reasons[1]; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." Iadimarco v. Runyon, 190 F.3d 151, 166 (3d Cir. 1999) (quoting Fuentes, 32 F.3d at 764).  One of these is sufficient; the employee does not have to prove both that the explanation is implausible *and* that discrimination was a motivating factor. Waldron v. SL Indus., Inc., 56 F.3d 491, 494-95 (3d Cir. 1995).  On the other hand, the employee cannot carry her burden by showing that the employer's decision was "wrong or mistaken." Fuentes v. Perskie, 32 F.3d 759, 765 (3d Cir. 1994). Rather, she must

---

[1]Where the plaintiff offers evidence "that would allow reasonable minds to conclude that the evidence of pretext is more credible than the employer's justifications, the employer's motion for summary judgment must fail." Iadimarco v. Runyon, 190 F.3d 151, 166 (3d Cir.1999). Thus, if a plaintiff produces credible evidence that it is more likely than not that the employer did not act for its proffered reason, the employer's decision remains unexplained and the inferences from the evidence produced by the plaintiff may be sufficient to prove the ultimate fact of discriminatory intent.  Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 524 (3d Cir. 1992).

demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact finder *could* rationally find them unworthy of credence," id. (citing Ezold, 983 F.2d at 531), "and hence infer 'that the employer did not act for [the asserted] non-discriminatory reasons,'" id. (citing Josey v. John R. Hollingsworth Corp., 996 F.2d 632, 638 (3d Cir. 1993)).

A thorough review of the record leads to questions about the true motivation for Plaintiff's termination, and as such summary judgment must be denied. The morning of December 8, 2004, Plaintiff e-mailed Sinclair, Willans, Whitby, and Connell to let them know she would be taking a three-month medical leave as of December 27, 2004. Two days later she was terminated. Notably, the reason given for her termination was unrelated to any of the previous warnings Plaintiff had received. Rather, the record reveals that ultimately Plaintiff was terminated for explaining rebills to the chargeback clerks when she was instructed to simply include the explanations in a note on each bill. The record, however, gives more of a sense that although not an ideal employee, Plaintiff satisfied her supervisors' needs and they felt she was continuing to work on improving her job performance. In such a circumstance, this Court simply cannot find an absence of genuine issues of material fact, and summary judgment on the FMLA claim must therefore be denied. In addition, the Court finds that credibility questions abound in establishing any of the three asserted affirmative defenses, and therefore summary judgment is likewise inappropriate on the issue of damages.

### Employment Discrimination

In the second count of her Complaint, Plaintiff alleges that she was terminated due to the actual or perceived handicaps of Type 2 Diabetes and Hepatitis C, in violation of the NJLAD.  Analysis of claims made pursuant to the NJLAD generally follows the analysis of  Title VII claims.  Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 498 (3d Cir. 1999).  It is unlawful for an employer to "discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2.  In evaluating employment cases, the task of the Court is not to second-guess employment decisions, but is instead to determine whether the employment decisions were motivated by an illegal discriminatory purpose.  Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 525-27 (3d Cir. 1992).

Again, such analysis is governed by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Under McDonnell Douglas, an employee must first establish by a preponderance of the evidence a prima facie claim of discriminatory discharge under the NJLAD by showing (1) that she was handicapped, (2) that she was otherwise qualified to perform the essential functions of the job, with or without the accommodation by the employer, and was performing at a level that met the employer's expectations, (3) that she nevertheless was fired, and (4) that the employer sought someone to perform the same work after she left.  Muller v. Exxon Research & Eng'g Co., 786 A.2d 143 (N.J. Super. Ct. App. Div. 2001) (citing Clowes v. Terminix Int'l, Inc., 538 A.2d 794 (1988).

There is no evidence in the record that the employer in this case replaced or attempted to replace Plaintiff after she was terminated.  Instead, Plaintiff's position was

10

not filled, and ultimately was eliminated through automation. (Johnson Second Revised Cert., Exh. A, Ewald Dep., p. 16.) Accordingly, Plaintiff is unable to establish a prima facie case of discrimination under the NJLAD, see, e.g., Erickson v. Marsh & McLennan Co., 569 A.2d 793, 801 (N.J. 1990), and summary judgment will be granted on the second count of the Complaint.

## Conclusion

For the reasons set forth above, and in keeping with the discussion held on the record of oral argument on the motion,

**IT IS ORDERED** on this 30th day of June, 2008 that the motion of Defendants Amerisourcebergen Corp., Amerisourcebergen Services Corp., Erica Connell, and Katrina Willans, for summary judgment pursuant to Fed. R. Civ. P. 56 **[39]** is hereby **DENIED IN PART** and **GRANTED IN PART** as set forth above.

Finally, Plaintiff had filed (1) a motion to strike [40] the certification of defense attorney Terry D. Johnson, Esq. because it contained statements in support of the motion that were not within the attorney's personal knowledge; and (2) a motion to strike the Reply Brief and for sanctions [44] because the brief and accompanying materials were perceived to have been filed six days late without any request for an extension.

**IT IS ORDERED** that the docket reflect that both motions **[40, 44]** were **WITHDRAWN** by Plaintiff's counsel at oral argument on May 20, 2008, as indicated in the minutes of proceedings of that date [47].

/S/ Joseph H. Rodriguez
JOSEPH H. RODRIGUEZ
U.S.D.J.